UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOPHAL C.,<br><br>       Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | CASE NO. C21-0521-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1972.[1] Plaintiff has limited education and previously worked in the composite job of hand painter and spray painter. AR 31. Plaintiff filed an application for Supplemental Security Income (SSI) on June 13, 2018, alleging disability beginning December 1,

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

2009. AR 18. The application was denied at the initial level and on reconsideration. On July 29, 2020, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE).[2] AR 39–72. At the hearing, Plaintiff amended the alleged onset date to June 13, 2018, the date of Plaintiff's application. AR 18, 43. On August 28, 2020, the ALJ issued a decision finding Plaintiff not disabled.[3] AR 18–33. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on February 11, 2021 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

[2] The ALJ previously held a hearing in this matter on February 4, 2015. AR 73–105.

[3] The ALJ previously issued a decision finding Plaintiff not disabled on February 17, 2015. AR 106–16. Although the prior decision creates a presumption of continuing non-disability under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the ALJ found that "the presumption was rebutted because the mental regulations have changed." AR 19.

whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 21.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: degenerative joint disease, bilateral ankles; degenerative disc disease, spine; tendonitis, left ankle; ischemic heart disease; chronic liver disease; thyroid disorder; gastrointestinal reflux disorder; and depressive disorder. AR 21.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 21–23.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that Plaintiff was able to

> occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; he can stand and/or walk with normal breaks for a total of about six hours in an 8-hour workday; he can sit with normal breaks for a total of more than six hours on a sustained basis in an 8-hour workday; pushing and/or pulling, including operation of hand and foot controls, is unlimited other than as indicated for lifting and/or carrying; he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; and he must avoid concentrated exposure to vibration and hazards. He can understand, remember, and carry out simple instructions and exercise simple workplace judgment; he can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetition; he can respond appropriately to workplace supervision; he can have occasional superficial interaction with coworkers; he can deal with occasional changes in the work environment; and he can do work that requires no interaction with the general public to perform the work tasks, but this does not preclude work environments where the public is present.

ORDER
PAGE - 3

AR 23. The ALJ's RFC is consistent with the ability to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the limitations identified above. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 31.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a laundry sorter, hand packager, and garment sorter. AR 31–32.

Plaintiff raises the following issue on appeal: Whether the ALJ erred in failing to properly consider and provide adequate explanation for the preference assigned to the opinions of the agency's consultative examiner, Plaintiff's treating physician, and the agency's medical consultants. Plaintiff requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. Medical Opinions**

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[4] 20 C.F.R. § 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at § 416.920c(c)(1)–(2).

---

[4] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (applying the substantial evidence standard under the 2017 regulations); *Matos v. Comm'r of Soc. Sec. Admin.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. January 10, 2022) (same); *Zhu v. Comm'r of Soc. Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (same). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. <u>Dr. Kenneth Hapke, J.D., Ph.D.</u>

Dr. Hapke evaluated Plaintiff on August 9, 2019, and opined that "numerous psychosocial factors limit [Plaintiff's] employability, including: limited fluency in English, homelessness, poverty, etc.," that Plaintiff's "ability to sustain concentration is limited," that Plaintiff's memory is impaired, and that Plaintiff "is suspicious of other people and he prefers to be isolated and apart from others." AR 687. Dr. Hapke opined that Plaintiff "would have difficulty performing tasks normally required in work situations, including: following a regular schedule, managing routine changes, complying with instructions, working independently, and collaborating with colleagues, supervisors, and members of the public." AR 687. The doctor diagnosed Plaintiff with PTSD, unspecified neurocognitive disorder, and major depressive disorder with anxious distress. AR 687.

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. § 416.920c(a)–(b). The ALJ did not find Dr. Hapke's opinion persuasive. AR 30. The ALJ found that the doctor did not have an opportunity to review the updated medical record and that his opinion is "generally inconsistent with the longitudinal record such as, for example,

examination findings that the claimant retained grossly normal neurologic findings to include an intact memory; his often normal mood and affect; his often benign presentation to include full orientation and no acute distress; treatment notes indicating that he is able to maintain relationships with friends and family; treatment notes indicating appropriate grooming and hygiene; and his declination of psychiatric medication." AR 30. The ALJ further found that the doctor's opinion "as to the severity of claimant's limitations is not entirely consistent with his own examination notes." AR 30.

Plaintiff argues that the ALJ erred by rejecting Dr. Hapke's opinion based on the doctor's lack of opportunity to review the updated medical record. Dkt. 16, at 6. Plaintiff argues that "[t]here is no requirement that an examiner review records in order to produce a probative opinion." *Id.* Social Security regulations do not require an examining physician to review all of a claimant's medical records—indeed, even a consulting physician is not required to review all of a claimant's background records when assessing a claimant's limitations. *See Walshe v. Barnhart*, 70 Fed. Appx. 929, at *1 (9th Cir. July 16, 2003). Rather, the regulations provide that "[a] medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. § 416.920c(3)(v). Here, Dr. Hapke examined Plaintiff and provided clinical findings based on that assessment. Because Dr. Hapke's understanding of Plaintiff's impairments is sufficiently supported by the doctor's examination of Plaintiff and is not clearly undermined by the doctor's lack of opportunity to review the updated record, the ALJ's rejection of Dr. Hapke's opinion based on the doctor's lack of opportunity to review the updated record is not supported by substantial evidence.

Plaintiff argues that the ALJ erred by finding Dr. Hapke's opinion generally inconsistent

ORDER
PAGE - 6

with the longitudinal record and that the ALJ failed to clearly address the doctor's limitations regarding Plaintiff's memory and concentration. Dkt. 16, at 6–7. Under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . .will be." 20 C.F.R. § 416.920c(c)(2). In the decision, the ALJ cites to medical records showing Plaintiff in no acute distress and exhibiting normal mood and affect with normal neurological findings, including full orientation and normal memory. AR 27 (citing AR 626, 665, 670, 676, 682); *see Magallanes*, 881 F.2d at 755 (the Court may draw inferences from the ALJ's decision relevant to the ALJ's evaluation of medical opinion evidence). The records cited by the ALJ, however, pertain to Plaintiff's treatment of his physical ailments, including ankle arthritis, hypothyroidism, liver problems, and diarrhea, and there is no indication that a detailed neurological exam was performed during these treatments. *See* AR 626, 665, 670, 676, 682. Yet, when reviewing Plaintiff's mental, psychological, and behavioral treatment records, the ALJ found that Plaintiff has symptoms from his depressive disorder that "include poor sleep and nightmares; anxiety and depression; aural hallucinations; poor appetite, poor energy and fatigue; and cognitive dysfunction to include poor memory and concentration" and that "[t]reatment notes sometimes indicate that the claimant has a depressed mood and affect." AR 26 (citing AR 477, 633, 636, 641, 685, 689, 697, 707, 710); *see also* 20 C.F.R. § 416.920c(c)(3)(iii) ("The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s)."). The records from Plaintiff's mental health treatment are consistent with Dr. Hapke's opinion, yet the ALJ failed to discuss this corroborating evidence when evaluating the persuasiveness of Dr. Hapke's opinion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (the ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring

ORDER
PAGE - 7

competent evidence in the record that suggests an opposite result"). Therefore, the ALJ's rejection of Dr. Hapke's opinion based on inconsistency with the longitudinal record is not supported by substantial evidence.

Plaintiff further argues that the ALJ failed to explain how observations in the record regarding Plaintiff's normal mood and affect, full orientation, no acute distress, and grooming and hygiene were inconsistent with Dr. Hapke's findings. Dkt. 16, at 7. During his evaluation, Dr. Hapke similarly observed that Plaintiff appeared appropriately dressed, had adequate grooming and hygiene, had normal speech and eye contact, was pleasant and cooperative, was oriented, and had appropriate affect. AR 686. Nevertheless, Dr. Hapke assessed Plaintiff's limitations based on Plaintiff's performance on clinical tests, including serial sevens and memory recall. AR 687. Dr. Hapke's observations regarding Plaintiff's appearance, mood, and affect were not clearly inconsistent with observations by other providers in the record. Further, the ALJ failed to show how and why these observations were inconsistent with Dr. Hapke's opinion, including the doctor's assessment of limitations relating to Plaintiff's memory and concentration. An ALJ "must do more than offer his conclusions" and "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). Therefore, the ALJ's rejection of Dr. Hapke's opinion based on inconsistency with evidence of Plaintiff's appearance and presentation is not supported by substantial evidence.

Plaintiff next argues that the ALJ erred by finding Dr. Hapke's opinion inconsistent with treatment notes indicating that Plaintiff is able to maintain relationships with friends and family. Dkt. 16, at 8. An ALJ may consider inconsistency with the record in rejecting a physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Hapke diagnosed Plaintiff with several psychosocial issues, including homelessness, unemployment, poverty, inadequate

ORDER
PAGE - 8

finances, unstable housing, inadequate behavioral health support, social isolation, and lack of family support. AR 687. Dr. Hapke opined that Plaintiff "is suspicious of other people and he prefers to be apart from others" and that Plaintiff would have difficulty "collaborating with colleagues, supervisors, and members of the public." AR 687. The ALJ cited to treatment records noting that Plaintiff had some friend and family support (AR 27 (citing AR 636, 640, 700, 705, 707)); however, the ALJ did not address the other psychosocial issues that Dr. Hapke diagnosed and that supported the doctor's opinion that Plaintiff would have difficulty collaborating with colleagues, supervisors, and members of the public. *See* 20 C.F.R. § 416.920c(c)(1) (the ALJ must discuss the supportability factor when evaluating the persuasiveness of a medical opinion). Further, Dr. Hapke assessed limitations specifically regarding Plaintiff's ability to perform tasks in work situations (AR 687) and evidence of Plaintiff's ability to interact with friends and family outside of work situations does not clearly undermine Dr. Hapke's opinion. *See Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ."). Therefore, the ALJ's rejection of Dr. Hapke's assessment of Plaintiff's social limitations based on inconsistency with Plaintiff's relationships with friends and family is not supported by substantial evidence.

Plaintiff argues that the ALJ erred by rejecting Dr. Hapke's opinion based on Plaintiff's "'declination of psychiatric medication.'" Dkt. 16, at 9 (citing AR 30). The ALJ found that "[i]f [Plaintiff's] symptoms were as severe as alleged, one would expect him to pursue all available treatment" and that Plaintiff's "failure to do so suggest[s] that he may retain greater functioning than alleged." AR 27. An ALJ may consider improvement with treatment in discounting physician's opinion. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the ALJ did not find that Plaintiff's mental impairments improved with treatment. Further, the ALJ failed to

ORDER
PAGE - 9

explain how and why Plaintiff's declination of psychiatric medication undermined any of Dr. Hapke's assessed limitations. Indeed, Dr. Hapke based his opinions on clinical findings and did not base his opinions on Plaintiff's declination of psychiatric medication. *See* AR 687. Therefore, the ALJ's rejection of Dr. Hapke's opinion based on evidence that Plaintiff declined psychiatric medication is not supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred by finding Dr. Hapke's opinion inconsistent with the doctor's own examination notes. Dkt. 16, at 9. In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). The ALJ found that, "while Dr. Hapke's medical source statement indicates that the claimant is suspicious of others and prefers to be isolated, he also observed that the claimant was pleasant and cooperative with normal eye contact throughout the interview." AR 30. Dr. Hapke's opinion assessed Plaintiff's limitations based on his ability to perform tasks normally required in work situations. AR 687. Accordingly, Plaintiff's ability to be pleasant and cooperative during a psychological examination does not clearly undermined Dr. Hapke's assessment regarding Plaintiff's ability to perform work tasks. Further, Dr. Hapke based his opinion on Plaintiff's performance on clinical tests, which findings the ALJ failed to address under the supportability factor. *See* 20 C.F.R. § 416.920c(c)(1) (the ALJ must discuss the supportability factor when evaluating the persuasiveness of a medical opinion). Therefore, the ALJ's rejection of Dr. Hapke's opinion based on lack of support in the doctor's own findings is not supported by substantial evidence.

B. Dr. Jessica Guh, M.D.

Dr. Guh examined Plaintiff on March 2, 2018, and diagnosed Plaintiff with syncope and

ORDER
PAGE - 10

right ankle pain.[5] AR 471. Regarding Plaintiff's right ankle condition, Dr. Guh assessed Plaintiff with severe limitations regarding Plaintiff's ability to perform basic work activities, including sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. AR 471. The doctor opined that Plaintiff was "[s]everely limited" and "[u]nable to meet the demands of sedentary work." AR 472.

The ALJ did not find Dr. Guh's opinion persuasive. AR 28. The ALJ found that the doctor's "opinion as to the severity of the claimant's limitations is generally out of proportion to the longitudinal record to include, for example, physical examinations evidencing grossly normal neurological functioning, no edema in his lower extremities, and a generally unremarkable musculoskeletal system; treatment notes indicating that the claimant maintained appropriate grooming and hygiene; his generally benign presentation; his often normal mood and affect; and statements indicating that his ankle symptoms improved with treatment." AR 28. The ALJ further noted that Dr. Guh's opinion predated the period at issue. AR 28.

Plaintiff argues that the ALJ erred by rejecting Dr. Guh's opinion based on inconsistency with the longitudinal record. Dkt. 16, at 11. Specifically, Plaintiff argues that "[t]he ALJ did not cite to the record or point to specific evidence which was inconsistent with Dr. Guh's opinion. *Id.* Although the ALJ did not cite specific evidence in evaluating Dr. Guh's opinion, the Court may draw inferences from the ALJ's decision relevant to the ALJ's evaluation of medical opinion evidence. *See Magallanes*, 881 F.2d at 755. In the decision, the ALJ cited to examination records from March 2018, July 2018, October 2018, and February 2019 indicating "grossly non-focal neurological findings." AR 25 (citing AR 577, 665, 676, 682). However, the ALJ failed to explain

---

[5] Plaintiff identifies the date of Dr. Guh's examination as February 15, 2018 (Dkt. 16, at 10); however, the Court uses the date of the examination reflected on Dr. Guh's opinion. *See* AR 472.

ORDER
PAGE - 11

how and why neurological findings were inconsistent with Dr. Guh's assessment of Plaintiff's physical limitations. Further, although the ALJ cited to medical records from March 2018, July 2018, and January 2019 showing no edema in Plaintiff's lower extremities (AR 25 (citing AR 577, 626, 670)), the ALJ also found that medical records showed degenerative conditions in Plaintiff's spine and bilateral ankles and that "treatment notes indicated that [Plaintiff] sometimes had limited mobility due to ankle pain and swelling." AR 24 (citing AR 405, 463–64, 576, 591, 689, 692). The ALJ failed to discuss this evidence, which is consistent with Dr. Guh's assessment of limitations from Plaintiff's ankle pain. The ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). Finally, the ALJ failed to cite medical records that show Plaintiff's "generally unremarkable musculoskeletal system." AR 25, 28. Rather, the medical records cited by the ALJ regarding Plaintiff's ankle pain also noted that Plaintiff had an antalgic gait, significant arthritis of the right ankle, bilateral arthrosis, inability to lift heavy objects, and limited mobility, which evidence the ALJ did not discuss when evaluating the persuasiveness of Dr. Guh's opinion. AR 577, 591, 689, 692. Therefore, the ALJ's rejection of Dr. Guh's assessed limitation based on inconsistency with the longitudinal record was not supported by substantial evidence.

Plaintiff argues that the ALJ improperly rejected Dr. Guh's opinion based on inconsistency with treatment notes showing Plaintiff had appropriate grooming and hygiene, generally benign presentation, and normal mood and affect. Dkt. 16, at 13. The ALJ failed to explain how and why these findings were inconsistent with Dr. Guh's assessment limitations regarding Plaintiff's ankle pain. *See Embrey*, 849 F.2d at 421 (an ALJ "must do more than offer his conclusions" and "must

set forth his own interpretations and explain why they, rather than the doctors', are correct"). Therefore, the ALJ erred by rejecting Dr. Guh's assessed limitation by finding them inconsistent with treatment notes describing Plaintiff's grooming, hygiene, presentation, mood, and affect.

Plaintiff argues that the ALJ erred by rejecting Dr. Guh's opinion by finding that Plaintiff's ankle condition had improved. Dkt. 16, at 14. An ALJ may consider improvement with treatment in discounting physician's opinion. *Thomas*, 278 F.3d at 957. The ALJ cited treatment notes from April 2018, July 2018, October 2018, and July 2019, in which Plaintiff reported experiencing significant improvement in his pain and mobility after receiving an ankle injection and ankle brace. AR 25 (citing AR 604, 626, 673, 689). Plaintiff argues that the evidence is not clear whether Plaintiff's improvement continued. Dkt. 16, at 14. However, the burden of proof is on the claimant to establish entitlement to disability benefits. *Garrison*, 759 F.3d at 1011. Because the record shows that Plaintiff's right ankle pain improved with treatment, the ALJ did not err by rejecting Dr. Guh's opinion on this basis.

Plaintiff next argues that the ALJ failed to provide an adequate basis for discrediting Dr. Guh's concerns regarding Plaintiff's syncope condition. Dkt. 16, at 14. Although Dr. Guh diagnosed Plaintiff with syncope (AR 471), Plaintiff does not allege syncope to be a disabling impairment. *See, e.g.*, AR 48–49, 294. Further, the ALJ did not find syncope to be a severe impairment at step two (AR 21), and Plaintiff does not challenge this finding. Because Plaintiff has not alleged disability related to Plaintiff's syncope condition, the Court can reasonably infer that the ALJ's evaluation of Dr. Guh's opinion applied primarily to the doctor's assessment of limitations related to Plaintiff's ankle impairment. *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Therefore, Plaintiff has not shown that the ALJ erred by failing to

provide an adequate basis to reject Dr. Guh's assessment of limitation relating to Plaintiff's syncope condition.

Finally, Plaintiff argues that the ALJ improperly rejected Dr. Guh's opinion by finding that the opinion predated the period at issue. Dkt. 16, at 14. Medical opinions that predate the alleged onset of disability are of limited relevance. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Further, the Ninth Circuit has found that opinions that predate the relevant period are relevant only to meet the claimant's "burden of proving his condition has worsened." *Id.* Here, as discussed above, the evidence shows that Plaintiff's right ankle pain improved after Plaintiff received an ankle injection and ankle brace in March 2018, after Dr. Guh had provided her opinion. AR 578, 604, 626, 673, 689. Therefore, the ALJ did not err by rejecting Dr. Guh's opinion by finding that it predated the relevant period.

As discussed above, the ALJ erred by rejecting Dr. Guh's opinion by finding it inconsistent with the longitudinal record and treatment notes showing Plaintiff's adequate grooming and hygiene, benign presentation, and normal mood and affect. However, this error was harmless because the ALJ provided other valid reasons for rejecting Dr. Guh's assessed limitations, including by finding that Plaintiff's ankle condition improved with treatment and that Dr. Guh's opinion predated the relevant period. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination'") (internal citation omitted)). Nevertheless, because the matter is remanded on other grounds, the ALJ should reconsider Dr. Guh's assessed limitations as warranted by further consideration of the evidence on remand.

C.  Dr. Merry Alto, M.D., and Dr. Debra Baylor, M.D.

Dr. Alto, an agency medical consultant, opined that Plaintiff had the following exertional

limitations: Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 founds frequently, to stand and/or walk for four hours, to sit more than six hours, and was limited in both lower extremities in his ability to push and/or pull with no foot controls. AR 137. Dr. Alto assessed that Plaintiff had the following postural limitations: Plaintiff was able to climb ramps or stairs occasionally, to stoop and crouch frequently, to climb ladders/ropes/scaffolds never, and to balance, kneel, and crawl without limitations. AR 137–38. Regarding environmental limitations, Dr. Alto limited Plaintiff to avoiding concentrated exposure to vibration and hazards. AR 138. Dr. Alto explained that he assessed Plaintiff's exertional, postural, and environmental limitations based on Plaintiff's pain, spine and ankle impairments, and lower extremity strength, range of motion, and sensation. AR 137–38.

Dr. Baylor assessed limitations substantially similar to Dr. Alto, except that Dr. Baylor opined that Plaintiff was able to stand and/or walk for six hours, to climb ladders/ropes/scaffolds occasionally, and to stoop, kneel, crouch, and crawl frequently. AR 155–56. Dr. Baylor similarly explained that she assessed her limitations based on Plaintiff's pain, spine and ankle impairments, and lower extremity strength, range of motion, and sensation. AR 156.

The ALJ found the opinions of Drs. Alto and Baylor persuasive. AR 27–28. The ALJ found that, although the doctors did not examine Plaintiff, the opinions were "generally consistent with the longitudinal record to include, for example, physical examinations evidencing grossly normal neurological functioning, no edema in his lower extremities, and a generally unremarkable musculoskeletal system; the claimant's generally benign presentation; and statements indicating that his ankle symptoms improved with treatment." AR 27–28. The ALJ, however, found that Dr. Alto's assessment that Plaintiff was limited to standing and/or walking for four hours and both Dr. Alto and Dr. Baylor's assessment that Plaintiff cannot operate foot controls to be inconsistent

ORDER  
PAGE - 15

with evidence that Plaintiff's ankle symptoms improved with treatment and testimony that Plaintiff was able to drive. AR 27–28.

Plaintiff argues that the ALJ improperly by rejecting Drs. Alto and Baylor's opinion based on inconsistency with the longitudinal record because the ALJ gave vague references without explanation or citation to the record. Dkt. 16, at 16. Although the ALJ did not cite specific evidence in evaluating the doctors' opinions, the Court may draw inferences from the ALJ's decision relevant to the ALJ's evaluation of medical opinion evidence. *See Magallanes*, 881 F.2d at 755. In the decision, the ALJ cited to examination records from March 2018, July 2018, October 2018, and February 2019 indicating "grossly non-focal neurological findings." AR 25 (citing AR 577, 665, 676, 682). However, like with the evaluation of Dr. Guh's opinion, the ALJ failed to explain how and why neurological findings were consistent with Dr. Alto or Dr. Baylor's assessments of Plaintiff's physical limitations. Further, both Dr. Alto and Dr. Baylor explained that they based their opinions of Plaintiff's exertional, postural, and environmental limitations on Plaintiff's pain, spine and ankle impairments, and lower extremity strength, range of motion, and sensation; yet the ALJ rejected only some of the doctors' limitations based on evidence pertaining to Plaintiff's ankle improvement and driving ability while incorporating the doctors' other limitations into the RFC. AR 27–28. The ALJ failed to adequately explain why some limitations were rejected while other limitations were incorporated into the RFC when all of the doctors' limitations were supported by the same evidence pertaining to Plaintiff's ankle and spine. *See* 20 C.F.R. § 416.920c(a)–(b) (the ALJ must explain how the ALJ considered the supportability and consistency factors for each medical opinion of record). Finally, as discussed above, the ALJ failed to cite medical records that show Plaintiff's "generally unremarkable musculoskeletal system." AR 25, 28. Therefore, the ALJ's acceptance of the majority of Drs. Alto and Baylor's assessed

ORDER
PAGE - 16

limitations based on consistency with the longitudinal record and rejection of the doctors' standing and/or walking and foot control limitations based on inconsistency with the record was not supported by substantial evidence.

D.  Dr. Renee Eisenhauer, Ph.D.

Dr. Eisenhauer, an agency medical consultant, assessed that Plaintiff was moderately limited in several areas of Plaintiff's understanding and memory, concentration and persistence, social interaction, and adaptation. AR 157–59. In narrative form, Dr. Eisenhauer explained that Plaintiff can understand, remember, and carry out simple and repetitive tasks; retains the ability to maintained sustained concentration and persistence; can manage little to no contact with the general public; can have occasional contact with co-workers but no joint type tasks; can accept supervision; can adapt to routine and low-pressure work settings, travel independently, and recognize and respond to hazards; and would benefit from others input when setting goals and making plans. AR 157–59.

The ALJ found Dr. Eisenhauer's opinion persuasive. AR 29. The ALJ found that, although the doctor did not examine Plaintiff, Dr. Eisenhauer's opinion "is generally consistent with the longitudinal record such as, for example, examination findings that [Plaintiff] retained grossly normal neurologic findings to include an intact memory; his often normal mood and affect; his often benign presentation to include full orientation and no acute distress; treatment notes indicating that he is able to maintain relationships with friends and family; treatment notes indicating appropriate grooming and hygiene; and his declination of psychiatric medication." AR 29.

Plaintiff argues that the ALJ improperly accepted Dr. Eisenhauer's opinion by relying on the "exact same vague language he used to dismiss Dr. Hapke's opinion." Dkt. 16, at 16. The ALJ

ORDER
PAGE - 17

cites to medical records showing Plaintiff in no acute distress and exhibiting normal mood and affect with normal neurological findings, including full orientation and normal memory. AR 27 (citing AR 626, 665, 670, 676, 682). However, as discussed above regarding Dr. Hapke's opinion, the records cited by the ALJ pertain to Plaintiff's treatment of his physical ailments, including ankle arthritis, hypothyroidism, liver problems, and diarrhea, and there is no indication that a detailed neurological exam was performed during these treatments. *See* AR 626, 665, 670, 676, 682; *see also* 20 C.F.R. § 416.920c(c)(3)(iii) ("The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s)."). Indeed, when reviewing Plaintiff's mental, psychological, and behavioral treatment records, the ALJ found that Plaintiff's depressive disorder displayed symptoms of, among other things, "cognitive dysfunction to include poor memory and concentration" and that "[t]reatment notes sometimes indicate that the claimant has a depressed mood and affect." AR 26 (citing AR 477, 633, 636, 641, 685, 689, 697, 707, 710). These records are inconsistent with Dr. Eisenhauer's opinion that Plaintiff "retains the ability to maintain sustained concentration and persistence . . . on a regular and continuing basis" (AR 158), yet the ALJ failed to discuss this contrary evidence when evaluating the persuasiveness of Dr. Eisenhauer's opinion. *See Gallant*, 753 F.2d at 1456 (the ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). Further, the ALJ failed to discuss the inconsistencies within Dr. Eisenhauer's own opinion, including that the doctor assessed Plaintiff with moderate limitations in his ability to maintain attention and concentration for extended periods, to complete and normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without unreasonable number and length of rest periods, yet the doctor also opined that Plaintiff retains the ability to

ORDER
PAGE - 18

maintain sustained concentration and persistence during a normal 8-hour work day in a 40-hour workweek on a regular and continuing basis. AR 157–58. *See* 20 C.F.R. § 416.920c(a)–(b) (the ALJ must explain how the ALJ considered the supportability and consistency factors for each medical opinion of record).

The ALJ further failed to explain how and why observations in the record regarding Plaintiff's normal mood and affect, full orientation, no acute distress, and grooming and hygiene were consistent with Dr. Eisenhauer's findings. Indeed, Dr. Eisenhauer opined that Plaintiff was moderately limited is his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, which assessment is inconsistent with the ALJ's finding. AR 29, 158. Similarly, the ALJ failed to explain how and why Plaintiff's ability to maintain relationships with friends and family was consistent with Dr. Eisenhauer's opinion wherein the doctor assessed limitations concerning Plaintiff's ability to perform work-related activities and interact with coworkers, supervisors, and the general public. AR 158. Finally, the ALJ failed to explain how and why Plaintiff's declination of psychiatric medication was consistent with Dr. Eisenhauer's opinion, particularly when Dr. Eisenhauer did not address medication and the ALJ did not find that Plaintiff's mental impairments improved with treatment. Because the regulations require the ALJ to explain how the ALJ considered the supportability and consistency factors for each medical opinion of record, 20 C.F.R. § 416.920c(a)–(b), the ALJ's decision finding Dr. Eisenhauer's opinion persuasive based on consistency with the longitudinal record is not supported by substantial evidence.

//

//

//

ORDER
PAGE - 19

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 18th day of April, 2022.

MARY ALICE THEILER
United States Magistrate Judge